IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:12-CR-75-D-1

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| TREVIN MAURICE GIBSON, ) | |
| ) | |
| Defendant. ) | |

On May 17, 2021, Trevin Maurice Gibson ("Gibson" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 470]. On July 11, 2021, Gibson, through counsel, filed a memorandum in support [D.E. 478]. Gibson and his father also submitted letters in support of Gibson's motion [D.E. 488, 489]. On July 26, 2021, the government responded in opposition [D.E. 482] and filed documents in support [D.E. 483]. As explained below, the court denies Gibson's motion.

I.

Gibson is one of the most notorious armed robbers in the history of Eastern North Carolina. While on federal supervised release for possession of stolen firearms and aiding and abetting and immediately after serving a 54-month federal sentence, Gibson committed ten armed robberies of fast food restaurants in Eastern North Carolina. See Sent. Tr. [D.E. 285] 12–36. In fact, Gibson committed two of the armed robberies while residing in a federal halfway house. See id. On November 4, 2013, pursuant to a written plea agreement, Gibson pleaded guilty to two counts of using or carrying a firearm during and in relation to a crime of violence and aiding and abetting

(counts one and two of the superseding criminal information). See [D.E. 220, 229, 230], Plea Agr. [D.E. 231]. Pursuant to the plea agreement, the government agreed to dismiss at sentencing the original and superseding indictments, including ten counts of Hobbs Act robbery and aiding and abetting (counts one, three, seven, eleven, thirteen, twenty-one, twenty-three, twenty-five, twenty-nine and thirty-one), and ten counts of brandishing a firearm during and in relation to a crime of violence and aiding and abetting (counts two, four, eight, twelve, fourteen, twenty-two, twenty-four, twenty-six, thirty, and thirty-two). See [D.E. 132]; Plea Agr. ¶ 4(a).

On February 11, 2014, the court held Gibson's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); [D.E. 257]; PSR [D.E. 249]; Sent. Tr. at 4. The court calculated Gibson's advisory guideline range to be 60 months' imprisonment on count one and 300 months' consecutive imprisonment on count two. See PSR ¶¶ 39–40; Sent. Tr. at 5. Taking into account dismissed conduct, the court upwardly departed under section 5K2.21. See Sent. Tr. at 5–21. With the upward departure and after considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a) (including Gibson's age, the seriousness of the crimes, the effect on the victims, and that he committed the offenses while either in BOP custody or on supervised release), the court sentenced Gibson to 216 months' imprisonment on count one and 300 months' consecutive imprisonment on count two, for a total term of 516 months' imprisonment. See id. at 5–24; [D.E. 264]. The court also sentenced Gibson to 24 months' imprisonment on the revocation of his supervised release, to run consecutive to his sentence for the new criminal conduct. See Sent. Tr. at 35.[1] Gibson appealed. See [D.E. 266]. On October 22, 2015, the United States Court of Appeals for the Fourth Circuit affirmed Gibson's

---

[1] Gibson has not asked the court to reduce his revocation sentence.

2

sentence. See United States v. Gibson, 636 F. App'x 134, 140–41 (4th Cir. 2015) (unpublished); [D.E. 336, 337, 338].

II.

On December 21, 2018, the First Step Act took effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75%

3

of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[2] Application note 2 states

---

[2] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1.  Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at

---

<blockquote>
when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).
</blockquote>

U.S.S.G. § 1B1.13 cmt. n.1.

5

186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., United States v. Hargrove, 30 F.4th 189, 194–95, 198–200 (4th Cir. 2022); McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

In his motion for compassionate release, Gibson claims that he has satisfied the exhaustion requirement. See [D.E. 470] 3. The government has not invoked section 3582's exhaustion requirement. Cf. United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021). Accordingly, the court addresses Gibson's motion on the merits.

Gibson seeks immediate release via sentence reduction to time served pursuant to section 3582(c)(1)(A) or a recommendation to home confinement pursuant to 18 U.S.C. § 3621(b)(4)(B). See [D.E. 470] 10; [D.E. 478] 3–4. In support, Gibson argues that his stacked section 924(c) convictions, his youth at the time of the offenses, his rehabilitative efforts, his release plan, and the COVID-19 pandemic constitute extraordinary and compelling reasons warranting a sentence reduction to time served. See [D.E. 470] 4–10; [D.E. 470-1]; [D.E. 478] 3–6; [D.E. 489].

As for the COVID-19 pandemic, Gibson makes general arguments about the risk from COVID-19. See [D.E. 478] 3–4. Gibson, however, has received two doses of a COVID-19 vaccine, which greatly diminishes his risk of serious infection from COVID-19. See [D.E. 489]; see, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not

6

diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), petition for cert. filed, No. 21-6594 (U.S. Dec. 15, 2021); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). Accordingly, the general risk from COVID-19 that Gibson cites is not an extraordinary and compelling reason warranting a sentence reduction. See 18 U.S.C. § 3582(c)(1)(A).

Gibson also argues that the First Step Act's changes to sentencing for section 924(c) convictions constitutes an extraordinary and compelling reason to reduce his sentence. See [D.E. 470] 3; [D.E. 478] 5–6. When the court sentenced Gibson on February 11, 2014, section 924(c) required a 60-month mandatory minimum sentence for using and carrying a firearm during and in

7

relation to a crime of violence and a 300-month mandatory minimum consecutive sentence for every subsequent conviction of the same offense. See McCoy, 981 F.3d at 275. A section 924(c) conviction was a subsequent conviction even if a defendant obtained the first section 924(c) conviction in the same case. See id. Gibson pleaded guilty to two counts of using and carrying a firearm during and in relation to a crime of violence, triggering the 300-month mandatory minimum consecutive sentence on count two. See [D.E. 151, 257]; Sent. Tr. at 5.

In the First Step Act, Congress changed the law so that a section 924(c) conviction is only a subsequent conviction if the first section 924(c) conviction "arises from a separate case and already has become final." McCoy, 981 F.3d at 275 (quotation omitted). Thus, section 924(c)(1)(C)(i) "no longer applies to multiple § 924(c) convictions obtained in a single prosecution." United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020); see McCoy, 981 F.3d at 275. Section 403(b) of the First Step Act applies this change to section 924(c) "to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." § 403(b), 132 Stat. at 5222. The court, however, sentenced Gibson in 2014, long before Congress enacted the First Step Act. Nonetheless, stacked sentences under section 924(c) may form the basis for a successful motion under section 3582(c)(1)(A). See McCoy, 981 F.3d at 284–86.

Gibson also argues that the court should consider his youth at the time of the offenses and his rehabilitative efforts. See [D.E. 470] 4–10; [D.E. 470-1]; [D.E. 478] 5–6. Gibson cites cases and scientific studies concerning brain development and the resulting effects on behavior. See [D.E. 470] 5–9.

The court assumes without deciding the First Step Act's non-retroactive changes to 924(c) sentencing and charging, Gibson's youth, his rehabilitative efforts, and his release plan constitute "extraordinary and compelling" reasons. Cf. McCoy, 981 F.3d at 284–86. Gibson has a release plan

8

that includes living with his family, getting a CDL, and mentoring at-risk youth. See [D.E. 470] 10; [D.E. 478] 5. Nevertheless, as explained below, the section 3553(a) factors counsel against reducing Gibson's sentence.

The section 3553(a) factors include the nature and circumstances of the offense and the history and characteristics of the defendant. See 18 U.S.C. § 3553(a)(1). Gibson pleaded guilty to two counts of using and carrying a firearm during and in relation to a crime of violence and aiding and abetting (counts one and two of the superseding criminal information). See PSR ¶¶ 1–12. Gibson and his co-defendants terrorized several Eastern North Carolina communities, committing a string of armed robberies of fast food restaurants over a five-month period. See id. ¶ 14; Sent. Tr. at 13. Gibson committed two of these robberies while in a federal halfway house and eight of these robberies while on federal supervised release. See id. at 12–36. These robberies traumatized employees and customers at the restaurants and instilled fear in members of the communities. See Sent. Tr. at 13–14.

As for Gibson's history and characteristics, Gibson's serious criminal conduct was nothing new. Gibson's serious and violent criminal history began with possessing brass knuckles on school property at 16 years old. See PSR ¶ 16. By age 18, Gibson was convicted in federal court for stealing 12 guns. See id. ¶ 17. The court sentenced Gibson to 54 months' imprisonment and three years of supervised release. See id. Gibson committed the string of armed robberies that led to his current incarceration while in BOP custody at a halfway house and while on federal supervised release. See id. ¶¶ 14, 17; Sent. Tr. at 12–36.

Gibson has made some positive efforts while federally incarcerated. See [D.E. 405] 9–10. He has taken BOP courses and studied self-help material. See [D.E. 470] 9–10; [D.E. 478] 5. Gibson has been moved from high security to medium security. See [D.E. 478] 5.

In ensuring that the sentence promotes respect for the law and imposes just punishment, the court also may consider that Gibson's sentence resulted from a carefully crafted plea agreement. See 18 U.S.C. § 3553(a)(2)(A). Under the plea agreement, Gibson agreed to plead guilty to two section 924(c) counts. In exchange, the government agreed to dismiss at sentencing ten counts of Hobbs Act robbery and aiding and abetting (counts one, three, seven, eleven, thirteen, twenty-one, twenty-three, twenty-five, twenty-nine, and thirty-one) and ten other section 924(c) counts (counts two, four, eight, twelve, fourteen, twenty-two, twenty-four, twenty-six, thirty, and thirty-two). See [D.E. 132]; Plea Agr. ¶ 4(a). Had Gibson been convicted of all of the counts on which he was indicted, he would have faced over 2,800 months in prison. See PSR ¶ 41; Gibson, 636 F. App'x at 140–41.

The court emphasized the great need to incapacitate Gibson and promote respect for the law when it sentenced Gibson. See Sent. Tr. at 12–36. In order to account for the dismissed conduct, the court upwardly departed. See id. Moreover, the court noted that even if it improperly upwardly departed, it would have imposed the same sentence as an alternative variant sentence. See id. at 24.

The court must balance Gibson's positive efforts while federally incarcerated with his incredibly serious criminal conduct, the original upward departure, his horrible criminal history, his performance in federal custody, his dreadful performance on federal supervision, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered the COVID-19 pandemic, changes in the law and the advisory guideline range under U.S.S.G. § 2K2.4, Gibson's rehabilitative efforts, and Gibson's release plan. The court recognizes Gibson has a supportive family. See [D.E. 470] 10; [D.E. 478] 5; [D.E. 488]; [D.E. 489]. Having considered the entire

10

record, the section 3553(a) factors, Gibson's arguments, the government's persuasive response, the need to punish Gibson for his serious criminal conduct, to incapacitate Gibson, to promote respect for the law, to deter others, and to protect society, the court denies Gibson's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Hargrove, 2022 WL 905436, at *7–8; High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Gibson's request that the court recommend home confinement to the BOP, the court declines. See [D.E. 478] 3–4; cf. United States v. Simon, No. 20-6701, 2022 WL 337126, at *1 (4th Cir. Feb. 4, 2022) (per curiam) (unpublished). Thus, the court dismisses Gibson's request for home confinement.

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 470] and DISMISSES defendant's request for home confinement.

SO ORDERED. This 25 day of April, 2022.

JAMES C. DEVER III
United States District Judge